■ RALEN HUMMEL et al., Respondents, v ROBERT VICARETTI, SR., et al., Appellants.—Harvey, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered April 8, 1988 in Sullivan County, upon a verdict rendered in favor of plaintiffs on the issue of liability.

In a bifurcated trial of this action, the jury found defendants 65% liable and plaintiffs 35% liable for the happening of an accident on defendants' property. From the evidence introduced at the trial the jury could have found the following to be fact. For quite some period of time prior to March 1, 1986, operators of recreational-type vehicles used the "pipeline trail" which ran through property owned by defendants. To prevent the unauthorized use of their property, defendants constructed a fence consisting of two strands of wire horizontally across the trail, one at knee height and the other at chest height. The strands of wire were of a light color. On March 1, 1986, plaintiff Ralen Hummel was operating a three-

wheel all-terrain vehicle along the trail. He did not observe the fence until he was so close to it that he could not avoid colliding with it. Nothing was attached to the fence to make it more visible to those using the trail. He was injured as a result of the collision.

Initially, defendants contend that the complaint should be dismissed for plaintiffs' failure to adequately plead a cause of action. Specifically, defendants allege that the complaint was insufficient in that it failed to contain the elements necessary to state a cause of action under General Obligations Law § 9-103. This statute protects a landowner from liability for certain injuries resulting from the recreational use of his property by others unless the injury is caused by the landowner's "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [2] [a]). Defendants fault the complaint because plaintiffs state only that defendants' actions were negligent rather than "willful or malicious" as required by statute. Defendants also contend that because the complaint does not specifically state that the fence was inherently dangerous, it should have been dismissed for insufficiency.

We do not agree. The record does not disclose any motion either prior to or during the trial addressed to the sufficiency of the complaint. It is undisputed that, despite any alleged insufficiencies in the pleadings, the entire case herein was tried on the theory that defendants willfully failed to warn about the fence in contravention of General Obligations Law § 9-103 (2) (a). Proof to this effect was introduced and the jury was so charged. Although a literal reading of the allegations contained in the complaint reveals that the precise words "willful", "malicious" or "inherently dangerous" were not utilized therein, we find that the factual allegations employed were broad enough to reasonably imply these elements despite the inartful nature of their drafting *(see, Diemer v Diemer,* 8 NY2d 206, 212). Nonetheless, "to the extent that the complaint may be deemed insufficient in that respect, it will be deemed amended to conform it to the proof" presented at trial *(Diamond Intl. Corp. v Little Kildare,* 28 AD2d 1192, 1194-1195, *revd on other grounds* 22 NY2d 819; *see,* CPLR 3025 [c]). It is well settled that a variance between the pleadings and the proof "may be disregarded unless it can be said to have misled an adversary and occasioned prejudice" *(Sharkey v Locust Val. Mar.,* 96 AD2d 1093, 1094; *see, Reich v Knopf,* 65 AD2d 618). This relief may be granted in the absence of a motion by a party and also in an appellate court, *sua sponte,* if

justice so requires *(see, D'Antoni v Goff,* 52 AD2d 973; Siegel, NY Prac § 404, at 533). Here, it is readily apparent that defendants were neither prejudiced nor surprised by plaintiffs' failure to plead their cause of action with more specificity. The entire case was conducted in the same manner as it would have been had the complaint been more specific.

Next, defendants claim that Supreme Court erred in its jury instructions regarding General Obligations Law § 9-103 (2) (a) by only charging the definition of "willful" failure to guard or warn rather than also defining the word "malicious". We see no error in this charge since the statute clearly imposes liability upon a landowner for a "willful *or* malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [2] [a] [emphasis supplied]). Since plaintiffs' case was tried on a theory of willful failure to guard, and the evidence presented by them was in conformity with that theory, no prejudice accrued to defendants by the narrowing of plaintiffs' claim as presented to the jury. In addition, we are also unpersuaded by defendants' further argument that Supreme Court's definition of "willful" was incorrect. The definition used by the court was in reasonable conformity with case law and standard jury instructions *(see, e.g., Gardner v Owasco Riv. Ry.,* 142 AD2d 61; *Seminara v Highland Lake Bible Conference,* 112 AD2d 630; PJI 2:10A, 2:91 [Supp]). Moreover, since the definition used by the court was the very definition requested by defendants in the first place, defendants cannot now be heard to complain *(see,* Siegel, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4110-b [1989 Supp Pamph], at 135).

Finally, we reject defendants' contention that the verdict in plaintiffs' favor was against the weight and sufficiency of the evidence. According to defendants, there was insufficient evidence adduced to establish a willful failure to guard or warn on defendants' part against a dangerous condition. In order to set aside a jury verdict, "it must be shown that the preponderance of the evidence is so greatly contrary to the jury's verdict that it could not have been rendered by any fair interpretation of the evidence" *(Hapgood v P & C Food Mkts.,* 149 AD2d 770, 771). Here, plaintiffs introduced evidence to show that defendants were aware that recreational riders used the pipeline path and, in fact, had tried to actively discourage them from doing so on occasion. In addition, defendants were responsible for putting up the thin wire fence which plaintiffs' witnesses testified had no markers or ribbons placed on it,

thus making it very difficult to see. Further testimony credited defendant Joanne Vicaretti with making the statement that it was "too bad [if the fence was a dangerous condition]. We put it there to keep people out." While Vicaretti denied making this statement, and defendants presented other evidence showing that the fence was erected to keep their horses in and that it was marked with surveyor's ribbons, these opposing versions of the story merely present questions of credibility for the jury to resolve *(see, Mechanick v Conradi,* 139 AD2d 857, 859). The jury obviously chose to credit plaintiffs' evidence and we find no impropriety in that choice. It is well settled that "[f]indings of fact that have sufficient support in the credible evidence will not be disturbed even if there is evidence leading to a contrary conclusion" *(Halvorsen v Ford Motor Co.,* 132 AD2d 57, 60, *lv denied* 71 NY2d 805; *see, Hapgood v P & C Food Mkts., supra).*

Judgment affirmed, with costs. Mahoney, P. J., Weiss, Yesawich, Jr., and Harvey, JJ., concur.

Casey, J., dissents and votes to reverse in a memorandum. Casey, J. (dissenting). In my view, the verdict is not only against the weight of the evidence, it is also unsupported by legally sufficient evidence. As outlined by the majority, viewed in the light most favorable to plaintiffs, the evidence establishes that defendants created a dangerous condition for the purpose of keeping recreational riders off their property, and failed to warn of the dangerous condition despite actual or constructive knowledge of both the hazard and the presence of recreational riders. In *Cutway v State of New York* (89 AD2d 406), we affirmed a judgment in favor of a claimant on virtually identical facts, but the Court of Appeals reversed (60 NY2d 183). As is clear from this court's decision in *Cutway* (89 AD2d 406, 407-408, *supra),* the affirmed findings of fact in the case established that, although the State's conduct was not the product of actual malice or an intent to cause injury, the State did create a trap or an inherently dangerous condition (a thin cable stretched across a roadway to prevent access by recreational riders of motorized vehicles); that the State knew or should have known the condition constituted an unreasonable hazard; and that the State failed to warn despite having reason to believe that recreational riders could not discover the condition in time to avoid injury. Thus, we were of the view that the State's careless or reckless conduct could rise to the level of a willful or malicious failure to warn under General Obligations Law § 9-103 (2), even in the absence of

actual malice or intent to injure.* The Court of Appeals held in *Cutway* that "there was no basis for imposing liability on the State for claimant's injuries" (60 NY2d 183, 192, *supra).*

The most damaging evidence to defendants in this case appears to be the testimony concerning a postaccident statement made by defendant Joanne Vicaretti, which is quoted by the majority. This evidence, however, establishes at most that defendants were indifferent to the hazard they created when they erected the fence, and it falls far short of the state of mind required for malice *(see, Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377, 385, n 4). As to the willful aspect of the statutory standard, defendants' conduct was no more willful than the reckless disregard shown by the State in the *Cutway* case, where despite having knowledge of the risk, it failed to warn of the trap or inherently dangerous condition it had created by stretching a thin cable across a roadway used by motorized recreational vehicles at a point where the cable was virtually invisible to approaching recreational riders. Had this evidence been sufficient to permit a trier of fact to find a willful failure to warn, the Court of Appeals would have ordered a new trial under the appropriate standard. Instead, the court found the evidence legally insufficient to impose liability under General Obligations Law § 9-103, and the same result must be reached here. The fatal flaw in this case is exposed by plaintiffs themselves in their brief on appeal, where they conclude, "The case really amounts to a classic pattern of failure to warn and a willful creation of the condition." The statute, however, requires a *willful failure to warn,* irrespective of whether the condition was willfully created. In *Seminara v Highland Lake Bible Conference* (112 AD2d 630, 633), this court said: "Intentional acts of unreasonable character, performed in disregard of a known or obvious risk so great as to make it highly probable that harm will result, are considered willful conduct in the realm of tort law * * *. We conclude that the same tests apply to a willful failure to warn".

While I agree that this is the appropriate test to apply in

---

* Relying upon our prior decision in *Rock v Concrete Materials* (46 AD2d 300, 303, *appeal dismissed* 36 NY2d 772), we held in *Cutway v State of New York* (89 AD2d 406, 407) that the "willful or malicious failure to warn" standard contained in the statute was the equivalent of the pre-*Basso (Basso v Miller,* 40 NY2d 233) standard applied to licensees. The Court of Appeals held (60 NY2d 183, 191-192) that our use of this standard was erroneous and that the evidence was insufficient as a matter of law under the proper standard.

determining willful failure to warn, it is clear from the Court of Appeals decision not to order a new trial on the issue of willful failure to warn in the *Cutway* case *(supra)* that the facts of that case and of this case do not permit a finding of willful failure to warn. Accordingly, I would reverse the judgment and dismiss the complaint.