■ DARLENE McCLEARY, as Administrator of the Estate of THOMAS HOPKINS, Deceased, Appellant-Respondent, v CITY OF GLENS FALLS, Defendant and Third-Party Plaintiff-Respondent-Appellant, et al., Defendants. COUNTY OF WARREN et al., Third-Party Defendants-Respondents-Appellants. [819 NYS2d 607]—

Cardona, P.J. Cross appeals from an order of the Supreme Court (Aulisi, J.), entered February 18, 2005 in Warren County, which, inter alia, denied plaintiff's motion for summary judgment and partially granted third-party defendants' motion for summary judgment dismissing the third-party complaint.

Plaintiff's decedent died in a snowmobiling accident on the evening of January 30, 2000 after he struck a chain that had been placed across a roadway by defendant City of Glens Falls in the Town of Queensbury, Warren County. The roadway in question was an access road owned by the City that led to a reservoir in an area abutting marked snowmobile trails for public use. Plaintiff commenced this action against, among others, the City, alleging that it negligently erected the chain with knowledge that the area was a trail used by snowmobilers and failed to post warning signs to notify the public of a dangerous condition. The City answered, asserting, among other things, that it had recreational use immunity under General Obligations Law § 9-103. Thereafter, the City commenced a third-party action against the County of Warren and South Warren Snowmobile Club, Inc., seeking, among other things, a defense and indemnification under a snowmobile trail license agreement it had with the County.

The County answered and cross-claimed against the Club for, among other things, a defense and indemnification under a snowmobile trail management agreement it had with the Club. Thereafter, upon various motions and cross motions of the parties, Supreme Court dismissed the complaint against the City and partially granted the County's and the Club's motions for summary judgment dismissing the third-party complaint. In so doing, Supreme Court declared that the County was required to defend the City and that the Club was required to defend the County. Plaintiff, the County, and the Club now cross-appeal.

Turning first to the dismissal of the complaint against the City, General Obligations Law § 9-103, the recreational use statute, grants immunity for ordinary negligence to landowners who permit members of the public to enter their property to engage in certain recreational activities, including snowmobiling (see General Obligations Law § 9-103 [1] [a]; *Bragg v Genesee County Agric. Socy.*, 84 NY2d 544, 548 [1994]). On appeal, plaintiff challenges only the scope of the City's immunity based upon the exemption that dissolves immunity when an injury results from a defendant's "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [2] [a]; *see Hillman v Penn Cent. Corp.*, 204 AD2d 902, 902 [1994]). Specifically, plaintiff contends that questions of fact exist with respect to the City's willful or malicious failure to guard against the danger posed by the chain which it erected. As the record reveals, however, plaintiff failed to raise General Obligations Law § 9-103 (2) (a) on her summary judgment motion and, thus, failed to preserve that issue for our review (*see Cahill v Harter*, 277 AD2d 655, 656 [2000]; *Aaron v Roemer, Wallens & Mineaux*, 272 AD2d 752, 755 [2000], *lv dismissed* 96 NY2d 730 [2001]; *LaDuke v Lyons*, 250 AD2d 969, 972 [1998]). Were plaintiff's argument preserved, we would, nevertheless, find that her moving papers do not warrant summary judgment in her favor.

In support of the motion, plaintiff references only the affidavit of Donald Coalts III, a former city employee, who averred that he was aware that snowmobilers had used the roadway in the past illegally. Coalts stated, however, that the roadway was not held out to the public for snowmobiling, that the chain had replaced a metal gate which had been torn down and vandalized repeatedly by trespassers, and the chain was erected to prevent the public from entering and contaminating the reservoir. Moreover, Coalts indicated that the chain was painted fluorescent orange and tied with surveyor's tape to make it visible at night and that it was maintained in that manner. In addition, Coalts stated that the property was posted so as to notify the public that access was allowed only to marked trails, and denied knowledge that the roadway was part of a marked trail system or that prior accidents occurred at the same location. In view of this evidence, we are unable to conclude that plaintiff demonstrated an "intentional act of unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would result" (*Gardner v Owasco Riv. Ry.*, 142 AD2d 61, 64 [1988], *lv denied* 74 NY2d 606 [1989])—a "high-threshold demonstration" which requires that the exemption be strictly construed (*Farnham v Kittinger*, 83 NY2d 520, 529 [1994]).

Although the complaint alleges that the City created a hazard and willfully failed to take steps to warn or guard against that risk, the evidence submitted by plaintiff, at best, simply confirms the nature of the accident, the physical condition of the area and the absence of any signs or warnings. While this proof may establish a "lack of affirmative action" by the City (*Gardner v Owasco Riv. Ry.*, *supra* at 65), it falls short of showing "a graver act than mere negligence" sufficient to defeat the City's immunity (*Sega v State of New York*, 60 NY2d 183, 193 [1983]; *see Hillman v Penn Cent. Corp.*, *supra* at 903). Mindful that the exemption under General Obligations Law § 9-103 "should not be read so expansively as to promote question-of-fact inquiries . . . 'in order that the major policy underlying the legislation itself is not defeated,' with all doubts resolved in favor of the general provision rather than the exception" (*Farnham v Kittinger*, *supra* at 529, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 213), we find that plaintiff failed to carry her burden to show that the City's actions with respect to the chain were either willful or malicious (*see Perrott v City of Troy*, 261 AD2d 29, 32 [1999]; *Scuderi v Niagara Mohawk Power Corp.*, 243 AD2d 1049, 1050 [1997]; *Hillman v Penn Cent. Corp.*, *supra* at 903-904; *Wilkins v State of New York*, 165 AD2d 514, 518 [1991]; *Mattison v Hudson Falls Cent. School Dist.*, 91 AD2d 1133, 1134 [1983]; *La Carte v New York Explosives Corp.*, 72 AD2d 873, 873 [1979]; *Rock v Concrete Materials*, 46 AD2d 300, 303 [1974], *lv dismissed* 36 NY2d 772 [1975]; *see also Bowles v Kawasaki Motor Corp. USA*, 179 AD2d 299, 303 [1992]).

Next, we agree with Supreme Court that the County is contractually obligated to indemnify the City for expenses it incurred in defending plaintiff's claims. Initially, the issue of whether the City's potential liability arose from the County's exercise of its rights under the licensing agreement, i.e., the right to use the existing trails "for the purpose of reconstructing and maintaining a trail system and allowing the operation of snowmobiles thereupon" and the right to delegate the duties of "trail reconstruction, maintenance and inspection," is dispositive because the agreement frames the County's obligation to defend. Here, plaintiff's complaint alleges that decedent was traveling on a marked snowmobile trail and that the City negligently "failed and refused to erect any warning devices" to warn snowmobilers of the existence of the chain. Therefore, inasmuch as it was alleged that plaintiff's injuries arose out of the County's failure to perform the proper maintenance and inspection of the trail system as contemplated by the licensing agreement, the County's duty to defend was triggered (*see Hawkins Home Groups v Southern Energy Homes*, 276 AD2d 866, 867 [2000]).

Moreover, in discerning the obligations of the parties to a contract, " 'courts will first look to the express contract language used to give effect to the intention of the parties' " (*id.*, quoting *Dryden Cent. School Dist. v Dryden Aquatic Racing Team*, 195 AD2d 790, 793 [1993]; *see Hooper Assoc. v AGS Computers*, 74 NY2d 487, 492-493 [1989]). Although the County contends that its duty to defend is no broader than its duty to indemnify because it is not an insurer and, thus, the dismissal of plaintiff's complaint against the City foreclosed its duty to defend (*see e.g. Brasch v Yonkers Constr. Co.*, 306 AD2d 508, 510-511 [2003]; *Cannavale v County of Westchester*, 158 AD2d 645, 646-647 [1990]), that distinction has no significance here, where the City is due the full benefit of the bargain it reached with the County under the clear and unambiguous terms of the licensing agreement (*see Bradley v Earl B. Feiden, Inc.*, 30 AD3d 709, 714 [2006]). Given the broad indemnity clause providing for indemnification "against any and all claims, demands, actions, suits, damages, liability, loss, cost and expense, including reasonable attorneys' fees" arising from the County's exercise of its rights under the license, the City is entitled to costs, including counsel fees, incurred in the defense of the primary action even though that action was dismissed (*see Hawkins Home Groups v Southern Energy Homes, supra* at 868; *Perchinsky v Granny "G" Prods.*, 232 AD2d 34, 39 [1997], *lv denied* 93 NY2d 812 [1999]).

Similarly, we are not persuaded by the Club's contention that it is not required to defend the County because the County was not found liable. Nothing in the broad language of the trail management agreement conditions the Club's duty to defend the County on a predicate finding of fault by the County. Indeed, by agreeing to "defend, indemnify and hold harmless the County . . . from any and all claims, (including without limitation third party claims for personal injury and/or real or personal property damage), causes of action, losses, expenses . . . costs . . . interests or losses, including attorneys' fees . . . which the County . . . may suffer as a result of . . . the Club's activities," the Club expressly contemplated the absence of wrongdoing by the County (*compare Edwards v International Bus. Machs. Corp.*, 174 AD2d 863, 864-865 [1991]). Thus, the fact that the County was not held liable did not vitiate the Club's duty to defend the County in connection with the third-party action (*see Perchinsky v Granny "G" Prods., supra* at 39; *Blair v County of Albany*, 127 AD2d 950, 951 [1987]; *see also DiPerna v American Broadcasting Cos.*, 200 AD2d 267, 270 [1994]). Inasmuch as the Club agreed to defend the County against any claims arising from the Club's "activities, conduct, omissions, non[ ]feasance

or misfeasance" in developing and maintaining the trails under license from the City, the third-party complaint alleging that the County failed to properly monitor the trail system triggered the Club's duty to defend (*see Gilbert v Albany Med. Ctr.*, 21 AD3d 677, 678 [2005]).

Peters, Spain, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.